IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE LUIS FUENTES,<br><br>*Defendant.* | CRIMINAL ACTION<br><br>NO. 17-320-7 |

**PAPPERT, J.**                                                                                                                                                                 July 23, 2020

## MEMORANDUM

On June 15, 2017, a federal grand jury returned an indictment against Jose Luis Fuentes, along with his co-conspirators, charging him with one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). *See* (Indictment, ECF No. 28). On November 7, 2018, Fuentes pleaded guilty to the lesser included offense of conspiracy to distribute 500 grams or more of cocaine. *See generally* (Nov. 7, 2018 Hr'g Tr., ECF No. 345-1).

Fuentes's Guilty Plea Agreement was pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *See* (Guilty Plea Agreement ¶ 5, ECF No. 257). In it, Fuentes and the Government stipulated that at least fifteen kilograms but less than fifty kilograms was the subject of the conspiracy undertaken by Fuentes and his co-conspirators, and that Fuentes's Sentencing Guideline range would be calculated based on those amounts pursuant to U.S.S.G. § 1B1.3. (*Id.* ¶ 14(a).) The plea agreement also called for a term of incarceration between seventy and eighty-four months. (*Id.* ¶ 5.)

1

Under the agreement, both the Government and Fuentes agreed not to appeal any sentence within the proposed range. *See* (*id.* ¶ 16).

The Court sentenced Fuentes within the C plea's agreed-upon parameters, specifically, an eighty-four-month term of imprisonment, four years of supervised release, a $900 fine and a $100 special assessment. *See* (Judgment, ECF No. 299). Fuentes was also ordered to forfeit his interest in property including, among other things, firearms, currency, vehicles and jewelry. *See* (*id.*) The Court imposed the sentence on February 28, 2019 and the Judgment was entered on the docket on March 6, 2019. *See* (*id.*)[1]

Fuentes filed a *pro se* Notice of Appeal, which he signed and dated September 30, 2019.[2] (ECF Nos. 320 & 321.) He then moved to withdraw the Notice, which the Third Circuit Court of Appeals granted, dismissing the appeal. (Order, ECF No. 332.) Fuentes thereafter filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (ECF No. 333.) His Motion raises three claims of ineffective assistance of counsel. First, that counsel failed to investigate and then try his case, such that Fuentes was forced to plead guilty. Second, that counsel failed to object to the drug amount. And third, that counsel refused to file a notice of appeal when Fuentes asked him to. After a review of the record and the parties' briefs, the Court

---

[1] The Court later signed the Judgment and Final Order of Forfeiture on October 8, 2019, which was entered on October 9, 2019. (Judgment and Final Order of Forfeiture, ECF No. 319.)

[2] Although Fuentes's notice of appeal was filed on the docket on October 15, 2019, he signed it on September 30, 2019. *See* (ECF No. 320.) Under the prison mailbox rule, a filing by a *pro se* prisoner is deemed filed when delivered to prison officials for mailing. *See Perry v. Diguglielmo*, 169 F. App'x 134, 136 n.3 (3d Cir. 2006) (unpublished). "In the absence of contrary evidence, a court will typically assume that a prisoner presented his or her petition to prison authorities for filing the same day that he or she signed it." *Hodge v. Klopotoski*, 2009 WL 3572262, at *15 (W.D. Pa. Oct. 26, 2009).

2

denies the Motion as to claims one and two, but grants an evidentiary hearing on the third claim.

I

A

28 U.S.C. § 2255 permits a prisoner in custody sentenced by a federal court to move that court to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. The petitioner bears the burden of demonstrating that his § 2255 motion has merit. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

B

Pursuant to 28 U.S.C. § 2255(b), a district court should grant a hearing to determine the issues and make factual findings "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Stated otherwise, where "a petition[er] alleges any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005). When considering the motion, a court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the

existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In the context of Fuentes's ineffective assistance of counsel claims, he need only "raise[] sufficient allegations" that counsel was ineffective in order to warrant a hearing. *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).

II

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of that right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Supreme Court's two-part test in *Strickland* governs claims for ineffective assistance of counsel. "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).

With respect to *Strickland*'s first prong, there is a "strong presumption" that counsel's performance was reasonable. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. As for the second prong of prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). A court need not address both *Strickland* prongs "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

When a defendant enters into a guilty plea on the advice of counsel, the test for determining the validity of that guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks and citation omitted). Since the voluntariness of a defendant's guilty plea depends on the effectiveness of his counsel, the Supreme Court has held that *Strickland*'s two-part test applies to ineffectiveness claims arising out of the plea process. *See id.* at 57. Because the Supreme Court has emphasized a "fundamental interest in the finality of guilty pleas," *id.* at 58, the prejudice prong requires that the defendant show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have proceeded to trial. *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *superseded by statute on other grounds*, *as recognized in United States v. Tuyen Quang Pham*, 587 F. App'x 6 (3d Cir. 2014) (unpublished). The defendant, however, must "make more than a bare allegation that but for counsel's error he would not have pleaded guilty and gone to trial." *Id.* at 118. Rather, the defendant must show that his decision to proceed to

5

trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

III

A

In Fuentes's first claim, he alleges that plea counsel was ineffective because he failed to investigate Fuentes's case and refused to proceed to trial, which had the effect of forcing Fuentes to plead guilty. (Def.'s Mot. 4–5, ECF No. 333.)[3] According to Fuentes, in September of 2018, his attorney "changed his attitude towards [Fuentes]" and told Fuentes he must plead guilty and would not defend him at trial. *See* (*id.* at 4). Fuentes requested new counsel during an October 18, 2018 status hearing. (*Id.* at 4–5; *see* Letter, ECF No. 351; Oct. 18, 2018 Hr'g Tr.) At that hearing, Fuentes informed the Court that counsel allegedly told him "he didn't want to represent me anymore," and called Fuentes "a fool not to take the seven year[] [sentence]." (Oct. 18, 2018 Hr'g Tr. 15:22–16:2.) After hearing from Fuentes and counsel, however, the Court concluded that Fuentes failed to make an adequate showing for why he deserved a new lawyer. *See* (*id.* 16:8–18; Order, ECF No. 243).

Fuentes claims that when he met with counsel in November of 2018, counsel again refused to represent him at trial. (Def.'s Mot. 5.) At that meeting, Fuentes asked counsel to subpoena calls with co-defendants, file a *Jencks* motion, unveil confidential informants and subpoena co-defendants. *See* (*id.*) Fuentes particularly wanted counsel to subpoena co-defendant Jose Sanchez-Delgado, because according to Fuentes, Sanchez-Delgado gave Fuentes a letter stating that Fuentes had nothing to do with the

---

[3] Page citations refer to the ECF pagination.

6

drug conspiracy.⁴ *See* (*id.*) According to Fuentes, his attorney told him he would not seek any evidence or subpoena witnesses and explained to Fuentes that he had no defense, such that if he went to trial he would be found guilty and receive a twenty-year sentence. *See* (*id.*) At that that point, Fuentes contends he "had no choice but to take the plea." (*Id.*)

1

In order to satisfy *Strickland's* prejudice prong, Fuentes must show that, but for counsel's inadequate investigation, there is a reasonable probability that counsel would have found favorable evidence and Fuentes would have proceeded to trial. The defendant must "allege with specificity what the investigation would have revealed" and how the fruits of that investigation would have caused the outcome of the proceeding to be different. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) (unpublished) ("To satisfy *Strickland*'s prejudice prong, [the defendant] must show that, but for his counsel's inadequate investigation, there is a reasonable probability that counsel would have found fingerprint evidence *favorable* to his claim of innocence, thus undermining confidence in his conviction." (emphasis added)). With respect to Fuentes's allegations that counsel failed to issue subpoenas for phone call recordings, unveil confidential informants, subpoena co-conspirators, or file a *Jencks* motion, he fails to allege what favorable information, if any, counsel's investigation would have revealed, or how it would have helped him at trial. He accordingly fails to show any prejudice.

---

⁴ Although Fuentes did not attach the letter to his § 2255 Motion, he sent a copy of it to the Court on October 28, 2018. (Letter, ECF No. 353.)

Fuentes also more specifically alleges that counsel was ineffective for failing to subpoena co-defendant Sanchez-Delgado, who allegedly gave Fuentes a letter stating that Fuentes purportedly had nothing to do with the drug conspiracy. (Def.'s Mot. 5; *see* Letter, ECF No. 353). Fuentes does not allege, however, that he told counsel about this letter. Because the alleged substance of that letter is contradicted by the terms of the Fuentes's Guilty Plea Agreement and his sworn statements during the change of plea hearing, he cannot show prejudice.

At the change of plea hearing, the prosecutor recited the factual basis for the plea, stating that if the case were to proceed to trial, the Government would introduce evidence establishing the existence of a drug trafficking scheme that obtained cocaine from sources in Puerto Rico for resale in Allentown, Pennsylvania and surrounding areas. (Nov. 7, 2018 Hr'g Tr. 27:19–28:1, ECF No. 345-1.) During the investigation, hundreds of phone calls and text messages between Fuentes and co-conspirators were intercepted via Title III wiretaps. *See* (*id.* at 28:2–22). During one telephone conversation on March 25, 2017, Fuentes told co-conspirator Sanchez-Delgado that he needed to talk to him about the "thing," and Sanchez-Delgado encouraged Fuentes to visit him. *See* (*id.* at 28:23–29:1.) The next day, during another telephone conversation, after Fuentes confirmed that Sanchez-Delgado was at home, Fuentes told him he was on his way there. *See* (*id.* at 29:1–4). Law enforcement saw Fuentes arrive at Sanchez-Delgado's home later that day. *See* (*id.* at 29:4–6).

The Government's investigation revealed that Fuentes was familiar with the nephew of a person referred to as the "old man," who had a bale of cocaine in Puerto Rico. *See* (*id.* at 29:7–11). Fuentes sought to arrange a transaction between the old

man and Sanchez-Delgado for the bale. (*Id.* at 29:19–20.) In a telephone conversation on March 27, 2017, Sanchez-Delgado asked Fuentes if he talked to the "guy" and if "it" was for sure. *See* (*id.* at 29:21–23). Sanchez-Delgado told Fuentes he was going to rent a truck for the "guys" and reminded Fuentes they were going over "there" on Friday. *See* (*id.* at 29:23–25). Two other co-conspirators—Edmanuel Bahamundi and Amil Rodriguez-DeJesus—were going to be in Puerto Rico to obtain the bale of cocaine. *See* (*id.* at 30:1–4). Sanchez-Delgado instructed Rodriguez-DeJesus over the phone not to open the bale in front of the old man because the old man did not know how much the package contained, but that the old man's nephew said there would be twenty-five kilograms even though there were usually fifty kilograms. *See* (*id.* at 30:4–11).

On March 30, 2017, Sanchez-Delgado sent Fuentes a text message stating, "The kids will be there tomorrow to get that. Let me know." *See* (*id.* at 30:12–14). Fuentes responded, "Give me a minute, the guy is ignoring me." (*Id.* at 30:15.) The next day, Sanchez-Delgado told Fuentes the guys had arrived, and the investigation confirmed that Rodriguez-DeJesus and Bahamundi-Vazquez traveled from Orlando, Florida to San Juan, Puerto Rico on March 31, 2017. *See* (*id.* at 30:16–20). At that time, Sanchez-Delgado instructed Fuentes to call the guy quickly because his guys were already there. *See* (*id.* at 30:20–22). Because these facts contradict Fuentes's allegation that he was not involved in the conspiracy, Fuentes fails to allege any prejudice and an evidentiary hearing is not warranted.[5]

---

[5] The Court asked Fuentes whether the Government correctly and accurately summarized the above-mentioned facts, and Fuentes initially responded, "No." *See* (Nov. 7, 2018 Hr'g Tr. 31:17–21). In addressing Fuentes's concerns, the Government acknowledged that Fuentes did not directly handle the drug transaction, touch the cocaine, discuss the amount that would be in the bale or sell it to any person. *See* (*id.* at 32:19–33:18.) After this discussion, Fuentes agreed that the prosecutor

9

The potential sentence that Fuentes faced had he proceeded to trial and been found guilty also undermines any argument that a decision to proceed to trial would have been a rational one. *Padilla*, 559 U.S. at 372 (explaining that to establish prejudice, defendant must show that his decision to proceed to trial "would have been rational under the circumstances"). At the change of plea hearing, the Government represented that Fuentes faced a maximum of forty years imprisonment and a mandatory minimum of five years imprisonment for the lesser included offense. *See* (Nov. 7, 2018 Hr'g Tr. 34:20–25). And if he proceeded to trial as charged in the indictment, Fuentes faced up to a lifetime of incarceration and a mandatory minimum sentence of twenty years because of a prior federal drug felony on his record. *See* (*id.* at 35:2–7). His Guilty Plea Agreement, however, called for, among other things, a prison term of at least seventy months and no greater than eighty-four months. *See* (*id.* at 10:3–9).

2

Fuentes also claims that counsel was ineffective for refusing to take the case to trial, which effectively forced Fuentes to plead guilty. *See* (Def.'s Mot. 4–5). This claim lacks merit, as it is again contradicted by Fuentes's Guilty Plea Agreement and his statements under oath at the change of plea hearing. A defendant's sworn statements during a change of plea hearing are presumed true and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ([I]n the absence of

---

"addressed [his] concerns." *See* (*id.* at 34:8–10). In any event, none of what Fuentes disputed bears on his guilt.

10

extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

During Fuentes's change of plea hearing, he told the Court that he reviewed the indictment and plea agreement with his attorney and was satisfied with his attorney's representation. *See* (Nov. 7, 2018 Hr'g Tr. 7:21–8:12; 15:20–25). Fuentes confirmed that he understood the felony charge against him. *See* (*id.* at 8:13–18). He also agreed that the terms of his C plea included, among other things, a term of incarceration of at least seventy months and no greater than eighty-four months, and that at least fifteen kilograms but less than fifty kilograms was the subject of the conspiracy. *See* (*id.* at 10:3–15:19). Fuentes also stated that before signing it, he discussed his written plea agreement with his attorney, and counsel said that they discussed it together in Spanish. *See* (*id.* at 15:23–16:14). Fuentes stated that he understood the document, had enough time to go over it with his attorney before signing it, and had no further questions about it. *See* (*id.* at 16:10–17). He also confirmed that he understood the acknowledgement of rights form and that he talked to his lawyer before signing it. *See* (*id.* at 16:19–17:14).

Fuentes affirmed that no one "made any threats, promises or assurances . . . of any kind other than what is set forth in [the] guilty plea agreement to convince [him] to plead guilty." (*Id.* at 18:21–25.) When the Court asked him whether "anyone threatened you, coerced you or forced you in any way to plea[d] guilty," Fuentes responded, "No." (*Id.* at 38:6–8.) He then answered in the affirmative when the Court

11

asked him, "Has your decision to change your plea been made of your own free will?" (*Id.* at 38:12–14.)

Fuentes confirmed that he understood he was entitled to plead not guilty and would have the right to be tried by a jury or a judge, (*id.* at 19:15–21), and he acknowledged that he understood he had a "right to be represented by a lawyer at every stage of the proceeding." (*Id.* at 7:10–13.) Fuentes agreed to the terms of his plea agreement and that he was pleading guilty "because he is in fact guilty." (*Id.* at 15:8–19.) At no time during the change of plea hearing did Fuentes indicate in any way that he felt that he was forced or pressured into pleading guilty, or that anyone was making him do so. *See United States v. Hogan*, 2017 WL 3015192, at *3 (E.D. Pa. Feb. 17, 2017) (rejecting ineffective assistance of counsel claim without evidentiary hearing where petitioner's testimony at change of plea hearing contradicted claim that counsel pressured him into signing the plea agreement).

The fact that Fuentes later attempted to withdraw his guilty plea does not vitiate any of his sworn statements or representations to the Court. Prior to the originally scheduled February 19, 2019 sentencing hearing, Fuentes sent to the Court an uncounseled email listing eight objections to the Presentence Investigation Report. (Notice of Hearing, ECF No. 262; *Pro Se* Objection to Presentence Investigation Report, ECF No. 279.) In that email, Fuentes wrote that he sought the resolution of his objections or would be "forced to take [his] plea back." *See* (*Pro Se* Objection to Presentence Investigation Report). None of these objections went to the voluntariness of his plea or whether counsel forced him to enter a guilty plea. *See* (*id.*) At the hearing, the Court confirmed with Fuentes that he sought to withdraw his guilty plea.

12

(Feb. 19, 2019 Hr'g Tr. 9:5–10, ECF No. 345-2.) According to Fuentes, the objections listed in his email were "part of the foundation" for why he should be allowed to withdraw his guilty plea, and he added that his attorney "brought the plea agreement" after telling Fuentes "he didn't want to defend me at trial." (*Id.* at 9:9–10; 16:7–10.) After hearing from defense counsel, the Court stated that it did not find credible Fuentes's complaints about his lawyer, but nonetheless told Fuentes and his attorney to inform the Court by the following week whether Fuentes wished to file a motion to withdraw his plea. *See* (*id.* at 19:14–15; 20:4–9). At a hearing on February 28, 2019, Fuentes told the Court that he wished to proceed with the sentencing and not withdraw his plea. (Feb. 28, 2019 Hr'g Tr. 4:15–5:5, ECF No. 315.)

During a lengthy colloquy, Fuentes knowingly, voluntarily and intelligently pleaded guilty, and his subsequent waffling does not change that fact. *See, e.g.*, *Rossin v. United States*, 2007 WL 666777, at *1–2 (E.D. Pa. Feb. 22, 2007) (denying petitioner's § 2255 motion without evidentiary hearing where petitioner entered guilty plea and later sought to withdraw it claiming his attorney instructed him to answer affirmatively to all questions, because the record demonstrated petitioner voluntarily and knowingly entered a guilty plea). Fuentes made unequivocal statements under oath during his change of plea hearing and later, despite having the opportunity to withdraw his guilty plea, he opted to honor it through sentencing. Because a defendant's sworn statements during a plea hearing are presumed true and "constitute a formidable barrier in any subsequent collateral proceedings," the Court denies this claim without an evidentiary hearing. *Blackledge*, 431 U.S. at 74.

B

Fuentes's second claim alleges that "[c]ounsel was ineffective for not objecting to the drug amount." (Def.'s Mot. 6.) According to Fuentes, the "prosecution admitted they had no[] idea what was in the bale" and there were "no phone calls or any circumstantial evidence to show what was in the bale." (Def.'s Mot. 6.) Fuentes argues that had he gone to trial, "all of [his] co-defendants would have testified that there was no bale," but his counsel told him that the co-defendants could not testify in Fuentes's favor.[6] (*Id*. at 6.) The Government argues that Fuentes fails to establish a *prima facie* ineffectiveness claim, both because counsel's failure to object to the drug amount was not objectively deficient, and because Fuentes fails to show any prejudice. *See* (Gov't Resp. 13, ECF No. 345).

1

Fuentes's claim rests on the factual premise that the Government had no direct or circumstantial evidence establishing the quantity of drugs at issue in the conspiracy. As the Government points out, however, the law of conspiracy, combined with the record at the change of plea hearing, indicates otherwise. *See* (Gov't Resp. 13–14). To prove conspiracy, the government must "establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal."[7] *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

---

[6]     It is not entirely clear whether Fuentes's claim is based on counsel's failure to object to the drug amount during the change of plea hearing or at sentencing, so the Court considers counsel's decision not to do so at both proceedings.

[7]     "[I]t is neither an element of 21 U.S.C. § 846 nor a constitutional requirement that a defendant have committed an overt act in furtherance of the conspiracy." *United States v. Gibbs*, 190 F.3d 188, 197 n.2 (3d Cir. 1999) (citing *United States v. Shabani*, 513 U.S. 10, 11 (1994)).

The government need not prove that every defendant knew of all the conspiracy's details, goals or other participants, and the government may prove its conspiracy case entirely through circumstantial evidence. *Gibbs*, 190 F.3d at 197; *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc).

First and foremost, Fuentes stipulated in his Guilty Plea Agreement to the amount of drugs at issue; the plea agreement he signed (after he discussed it with his lawyer and swore to the Court that he understood it, (Nov. 7, 2018 Hr'g Tr. 15:23–16:17)), stated that "[t]he parties agree and stipulate that: at least 15 kilograms but less than 50 kilograms of cocaine was the subject of the conspiracy jointly undertaken by defendant and co-conspirators; this amount was within the scope of the defendant's agreement; [and] this amount was reasonably foreseeable to the defendant in connection with the conspiracy, and the defendant's Guideline range should be calculated based on these amounts pursuant to USSG § 1B1.3." (Guilty Plea Agreement ¶ 14(a).)

During the change of plea hearing, the Government reviewed the factual basis for the conspiracy offense, and again, it relied on the intercepted telephone conversations between Fuentes and Sanchez-Delgado, in which Fuentes connected Sanchez-Delgado to the old man in Puerto Rico seeking to move a bale of cocaine. *See* (Nov. 7, 2018 Hr'g Tr. 28–30.) Sanchez-Delgado later told co-conspirator Rodriguez-DeJesus that the old man's nephew said there were twenty-five kilograms in the bale, which usually contains fifty kilograms. (*Id.* at 30:7–9.) At the change of plea hearing, Fuentes acknowledged the Government's factual recitation of the case after the Government clarified that (1) Fuentes did not directly handle any of the drug

transactions, touch the cocaine or personally sell it, and that (2) Sanchez-Delgado and Fuentes did not discuss the amount of cocaine in the bale during their telephone conversations. *See* (Nov. 7, 2018 Hr'g Tr. 32:9–34:4). Even so, under *Pinkerton v. United States*, 328 U.S. 640 (1946), a defendant is responsible for a co-conspirator's acts when those acts are (1) committed in furtherance of the conspiracy and (2) reasonably foreseeable by the defendant as a natural consequence of the unlawful agreement. *Id.* at 646–47.

The facts demonstrate a "unity of purpose" between the conspirators with the "intent to achieve a common goal" of acquiring the bale, which the conspirators expected contained at least twenty-five kilograms of cocaine. Despite Fuentes's argument to the contrary, the lack of direct physical evidence is not a reason for plea counsel to object to the drug amount. Indeed, direct evidence of a conspiracy is rare and the "offense is usually provable only through circumstantial evidence." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001). The factual basis for his plea establishes that Fuentes was a member of a conspiracy that had the intent of achieving a common goal—that is, acquiring a bale of cocaine which the conspirators believed contained at least twenty-five kilograms. As such, counsel's decision to not object to the drug amount of the conspiracy was not ineffective. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

2

To the extent Fuentes's claim is focused on counsel's failure to object to the drug amount at his sentencing, this claim also lacks merit. The Presentence Investigation

Report—consistent with the stipulation in the Guilty Plea Agreement—stated that Fuentes possessed at least fifteen kilograms but less than fifty kilograms of cocaine in furtherance of the conspiracy. *See* (PSR ¶ 7a). The PSR also stated Fuentes was being held accountable for distributing twenty-five kilograms of cocaine based on his assistance to Sanchez-Delgado in identifying a cocaine source in Puerto Rico. (*Id.* ¶ 59).

Fuentes asserted *pro se* objections to the PSR, one of which being the incorrect assertion that the amount of drugs attributable to him "should be no more than what [he] agreed to in [his] plea of 500 grams." *See* (*Pro Se* Objection to Presentence Investigation Report). Counsel did not object to the drug weight in the PSR, nor could he have; it was based on the amount Fuentes stipulated to in his Guilty Plea Agreement. And in any event, counsel confirmed at the sentencing hearing that Fuentes's objections had been "resolved" through their meetings together. *See* (Feb. 28, 2019 Hr'g Tr. 6:9–17).

Fuentes ultimately benefited by receiving an 84-month sentence, which fell below his calculated guideline range of a 97- to 121-month sentence. (PSR ¶ 103.) In addition, for reasons previously discussed in Fuentes's first IAC claim, he fails to demonstrate prejudice—*i.e.*, that there is a reasonable probability that but for counsel's ineffectiveness, he would have proceeded to trial and it would have been rational to do so. *Padilla*, 559 U.S. at 372.

C

Lastly, Fuentes alleges that "[c]ounsel was ineffective for not docketing [his] [a]ppeal." (Def.'s Mot. 8.) According to Fuentes, he "asked counsel to appeal this case

17

after [his] sentence [but counsel] refused" because the plea agreement contained an appellate waiver. *See* (*id.*)

*Strickland* applies to claims of ineffective assistance of counsel where counsel fails to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Where a defendant expressly asks counsel to file an appeal, as Fuentes so alleges, counsel renders deficient performance for failing to do so even in the presence of a valid appellate waiver.[8] *Garza v. Idaho*, 139 S. Ct. 738, 746–47 (2019). Prejudice is presumed if the defendant "otherwise would have taken" an appeal, even "with no further showing from the defendant of the merits of his underlying claims." *Id.* at 742–44 (quoting *Flores-Ortega*, 528 U.S. at 484). The defendant need only demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have *timely* appealed." *Flores-Ortega*, 528 U.S. at 484 (emphasis added).

Fuentes has alleged a *prima facie* claim of ineffective assistance of counsel sufficient to warrant an evidentiary hearing. In his Motion, Fuentes asserts that he "asked counsel to appeal" his case but that counsel "refused" to do so because of the appellate waiver. (Def.'s Mot. 8.) When a defendant instructs his attorney to file an appeal and the attorney fails to so do, prejudice is presumed. *Garza*, 139 S. Ct. at 749–50. This prejudice cannot be overcome by the likely inevitability of the outcome on appeal because "even the broadest appeal waiver does not deprive a defendant of all appellate claims." *Id.* at 749–50.

---

[8] In *Garza*, the parties agreed to a plea agreement under Idaho Criminal Rule 11(f)(1)(C)—the state-law equivalent of Federal Rule 11(c)(1)(c)—in which Garza agreed to waive his right to appeal and his right to file a motion for the correction or reduction of his sentence. 139 S. Ct. at 750–51 (Thomas, J., dissenting).

18

The Government contends that Fuentes cannot show prejudice because he filed a *pro se* notice of appeal and later withdrew it.  *See* (Gov't Resp. 14–15).  The Government fails to consider the untimeliness of Fuentes's filing of his notice of appeal.  Federal Rule of Appellate Procedure 4(b) requires that a criminal defendant file a notice of appeal within fourteen days after the entry of the judgment.  Fed. R. App. P. 4(b)(1)(A)(i).  The Court sentenced Fuentes on February 28, 2019, and judgment was entered on March 6, 2019.  (Judgment, ECF No. 299.)  Fuentes did not file his *pro se* notice of appeal until September 30, 2019, well after the fourteen-day deadline expired.[9]  (ECF No. 320.)  That Fuentes ultimately withdrew his notice of appeal—and for reasons other than its untimeliness[10]—does not undermine the presumption of prejudice at this stage.  Indeed, *Flores-Ortega* instructs that the prejudice inquiry focus on whether, "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  528 U.S. at 484.  Although Fuentes withdrew his Notice of Appeal, citing his appellate waiver as the reason for doing so, he now states that he could have appealed other issues.  (Def.'s Mot. 8.)  This issue is not "clearly resolved" by the record; the Court cannot conclude—based on Fuentes' conflicting statements—that he still would have withdrawn his appeal had he timely filed it in the first instance.

---

[9] Fuentes filed his notice of appeal September 30, 2019, prior to the Clerk's entry of Judgment and Final Order of Forfeiture on October 9, 2019.  (ECF No. 319.)  But the Judgment became final as to Fuentes on March 6, 2019.  (ECF No. 299.)  *See* Fed. R. Crim. P. 32.2(b)(4) ("At sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order becomes final as to the defendant. . . .[but] it remains preliminary as to third parties . . . .").

[10] In Fuentes's Motion to Withdraw Notice of Appeal, he acknowledged "an Appeal Waiver exists in his Plea Agreement that precludes a Direct Appeal" and explained his desire to instead pursue ineffective assistance of counsel claims through a *habeas* petition.  *See* Appellant's Motion at 1, *United States v. Fuentes*, No. 19-333 (3d Cir. Jan. 13, 2020); *see also* (*Pro Se* Motion to Withdraw Notice of Appeal, ECF No. 329).

19

Fuentes's allegations in his third ineffective assistance of counsel claim are accordingly sufficient to justify an evidentiary hearing. The Court will appoint counsel from the CJA panel for that hearing, which will be held at a later date as determined by the Court. *See* Rules Governing § 2255 Cases in the United States District Courts, Rule 8(c).

IV

When a district court denies claims in a § 2255 motion, the petitioner may only appeal if "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). Section 2253 permits the issuance of a certificate of appealability where a petitioner has "made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To do so, Fuentes must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for Fuentes's first and second claims, he has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the disposition of those claims, so no certificate of appealability shall issue. Should Fuentes seek a certificate of appealability from the Third Circuit Court of Appeals, he must file a notice of appeal within sixty days of the entry of the Court's order. *See United States v. Jackson*, 802 F. App'x 50, 52 (3d Cir. 2020) (unpublished) (citing Fed. R. App. P. 4(a)(1)(B)).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.